IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH SCOTT GRAY, <br> No. 14672-040, <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL BUREAU of PRISONS, <br> WENDY J. ROAL, <br> and ROBERT ROLOFF, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 12-985-GPM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, who was formerly incarcerated at the Marion Federal Prison Camp ("Marion"), brings this *pro se* civil rights action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[1]  He also asserts claims under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  He seeks declaratory and injunctive relief as well as damages.

Plaintiff was confined at Marion from July 6, 2011, until some time in 2012, when he was transferred to the Federal Prison Camp in Duluth, Minnesota.  Because of his medical condition, Plaintiff depends on a wheelchair for his mobility and had used a motorized chair prior to his incarceration (Doc. 1-1, pp. 16-18).  However, upon his arrival at Marion, he was provided with a "push-only" wheelchair that he was unable to move under his own power (Doc.

---

[1] Plaintiff invokes 42 U.S.C. § 1983 as authority for his complaint.  That statute allows a civil rights action to be brought against a person acting under color of state law.  As Plaintiff is a federal prisoner, a *Bivens* action is the appropriate vehicle for this case claiming constitutional violations by federal actors.

1, pp. 1, 3). To further complicate matters, he was housed on the second floor of the camp facility, which was accessible only by stairs; the elevator was non-functional. There was a mobile stairclimber, but the prison-issued wheelchair would not fit on this device. Consequently, Plaintiff was forced to ascend and descend the stairs by crawling along the floor (which he describes as filthy on at least one occasion) any time he needed to use the handicap accessible restroom. The only restroom equipped with grab bars was located on the first floor of Plaintiff's housing unit. Plaintiff was assigned two fellow inmates as aides at different times, but he was often unable to contact an aide when he needed assistance, and both aides stopped helping him after a short time (Doc. 1, p. 3). Ultimately, Plaintiff was left to depend on the kindness of fellow inmates who might volunteer to help him. Plaintiff ended up soiling himself on several occasions when he was unable to get to the bathroom, enduring public humiliation as a result.

The limitations of his wheelchair also caused Plaintiff to be unable to negotiate the space in his housing unit, forcing him to crawl on the floor just to get to the bed. The lack of handicap-accessible facilities also shut Plaintiff out of amenities open to other prisoners, such as exercise/weight-training and game areas, the library, and the legal typing area. His access to fire escape and tornado shelter areas would necessitate traveling the entire length of the compound to pass through a locked gate to reach the wheelchair access point. Defendant Roal (the warden) refused to address these problems despite Plaintiff's requests (Doc. 1, p. 2).

Defendant Roloff (the prison chaplain) denied Plaintiff access to his Native American spiritual materials and prevented him from engaging in his religious ritual following the death of a family member (Doc. 1, p. 2). Although Bureau of Prisons ("BOP") policy allowed Plaintiff to possess a "Spiritual Bundle," prayer pipe, and traditional herbs, Defendant Roloff took these items away from Plaintiff. He complained to Defendant Roal about these violations, but she did

nothing.

After Plaintiff raised complaints about the violations of his religious rights, Defendant Roloff retaliated against him by filing false incident reports against him in October and November 2011 (Doc. 1, p. 4). Plaintiff also experienced retaliation for complaining about the inadequacy of his wheelchair and access to prison facilities, and ADA non-compliance, although the complaint is not clear as to which of the Defendants (or some other unnamed party) was responsible for the loss of privileges, which included denial of telephone and email access. He states that these restrictions hampered his ability to pursue the appeal of his conviction (Doc. 1, p. 4).

Plaintiff further complains that the totality of the conditions at Marion, including black mold; poor sanitation, hygiene, food, and air quality; overcrowding; and lack of accommodations for disabled inmates, violated the Eighth Amendment (Doc. 1, p. 3).

Finally, Plaintiff seeks credit against his sentence for the four months and seven days he spent in home confinement, prior to being confined at Marion (Doc. 1, p. 1).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendant Roal for deliberate indifference to medical needs, for the failure to provide him with accommodations for his disability (Count 1), against Defendants Roal and Roloff for denial of religious material and interference with his religious practice (Count 2), and against Defendants Roal and Roloff for retaliation (Count 3). However, the Federal Bureau of Prisons shall be dismissed as a Defendant in this action, because a *Bivens* claim may only be brought against an individual acting under the color of federal

authority, not against the United States or one of its agencies. *FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994).

Plaintiff's ADA claim (Count 4) must also be dismissed. The ADA, by definition, does not apply to the federal government or a federal agency such as the BOP and its federal prisons. While the ADA prohibits a "public entity" from excluding disabled individuals from its programs or otherwise discriminating against them, "public entity" is defined, in pertinent part, as "any State or local government; . . . any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(A); (B). *See also Penn. Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998) (ADA applies to *state* prisons); *Dyrek v. Garvey,* 334 F.3d 590, 597 n. 3 (7th Cir. 2003) ("the ADA does not apply to federal agencies"); *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2nd Cir. 2000) (federal agency not liable under Title II of the ADA); *Crowder v. True*, No. 91-C-7427, 1993 WL 532455, *5 (N.D. Ill. Dec. 21, 1993), *aff'd*, 74 F.3d 812 (7th Cir. 1996) (affirming dismissal of ADA claim brought by federal prisoner because federal defendants are not subject to the ADA).

Plaintiff's statements regarding general inhumane conditions of confinement (Count 5) lack specificity as to his assertions of uncleanliness, poor air quality and food, and overcrowding, and thus fail to state a cognizable claim on those grounds. Plaintiff's description of the floors as "filthy" is very relevant to his claims in Count 1 above, because Plaintiff had no alternative but to crawl on those floors because of Defendant Roal's failure to provide him with a usable wheelchair or other accommodations for his medical condition. However, Plaintiff never explains how the other problems (black mold, food, sanitation, hygiene, air quality, and overcrowding) affected him. He merely includes those items in a "laundry list" of conditions without further detail or comment on their severity or whether he suffered any harm as a result of

the prison environment (Doc. 1, p. 3). Plaintiff's cursory statements are not sufficient to indicate that he suffered any physical, psychological, or "probabilistic" harm from these alleged conditions. *See Thomas v. Illinois*, 2012 WL 4458347, *2 -3 (7th Cir. Sept. 27, 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (conclusory legal statements are not sufficient to state a claim). Therefore, Count 5 shall be dismissed without prejudice, and Plaintiff shall be given leave to amend his complaint to include any facts which may exist to support a claim that he was subjected to unconstitutional conditions of confinement. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the dismissal of Count 5 shall become a dismissal with prejudice. The amended complaint shall be subject to review pursuant to § 1915A.

The alleged denial of Plaintiff's access to exercise facilities (Count 6) may violate the constitution. *See Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001) (collecting cases); *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988) ("lack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened") (internal quotations omitted). The Court is thus unable to dismiss Plaintiff's exercise claim at this point in the litigation, and Count 6 against Defendant Roal shall receive further review.

As to Plaintiff's claim of denial of access to the courts (Count 7), the complaint does not contain sufficient information to state a cognizable claim. A prisoner must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v.*

*Knight*, 445 F.3d 965, 968 (7th Cir. 2006). *See also Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) (complaint must "place the defendants on notice of the plaintiff's claim so that they can begin to prepare their defense"). Plaintiff mentions his pending criminal appeal, but fails to show how Defendants' actions caused him any actual detriment in pursuing that case. *See Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987). Therefore, this claim shall be dismissed without prejudice, and Plaintiff shall be given leave to amend his complaint to include any facts which may exist to support a claim of denial of access to the courts. As noted above, if the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the dismissal of Count 7 shall become a dismissal with prejudice.

Finally, Plaintiff's claim that he should be given sentence credit for his period of home confinement (Count 8) cannot be adjudicated in this action. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (dismissing § 1983 claims that should have been brought as petitions for writ of habeas corpus); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (a petition for a writ of habeas corpus is the proper route "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody," such as outright freedom or an earlier date of release). Plaintiff must raise his sentence credit claim either in a habeas corpus action pursuant to 28 U.S.C. § 2241, providing Plaintiff has first exhausted his administrative remedies, or possibly through filing a motion in his criminal case.

As Plaintiff is no longer confined at Marion (and indeed did not file this action until after his transfer), his request for injunctive relief has become moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Only if Plaintiff can show "a realistic possibility" that he will again be incarcerated in Marion and be subjected to these same conditions, would it be proper to consider injunctive relief in this action. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011).

**Pending Motions**

On October 1, 2012, Plaintiff filed a motion for expedited consideration of his request for sentence credit (Doc. 8). This motion also contained a request to amend the complaint to add the Attorney General as a Defendant in connection with the sentence credit issue. The attached exhibits (Doc. 8-1) relate only to the sentence credit matter. As explained above, the sentence credit question (Count 8) cannot be addressed in this action. Accordingly, the motions in Doc. 8 are **DENIED** without prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 4** (ADA) is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 5** (prison conditions) and **COUNT 7** (access to courts) are **DISMISSED** without prejudice, with leave to amend the complaint as described below. **COUNT 8** (sentence credit) is **DISMISSED** without prejudice to the claim being brought in a properly filed habeas corpus action or in Plaintiff's criminal case.

Defendant **FEDERAL BUREAU OF PRISONS** is **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that, should he wish to proceed on his prison conditions claim in **COUNT 5,** and/or his access to court claim in **COUNT 7**, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support these claims, and naming the individual Defendant(s) directly responsible for the alleged deprivations in Count 5 and/or Count 7, within 35 days of the entry of this order (on or before November 13, 2012). An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended

Complaint must stand on its own, and in addition to the amended Count 5 and/or Count 7, must contain the allegations in Counts 1, 2, 3, and 6, which shall receive further review as determined above. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of **Count 5** and **Count 7** becoming a dismissal with prejudice. Review of Counts 1, 2, 3, and 6 shall proceed whether or not Plaintiff submits an amended complaint.

As to **COUNT 1** (deliberate indifference to medical needs), **COUNT 2** (religious infringement), **COUNT 3** (retaliation), and **COUNT 6** (exercise), the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **ROAL** and **ROLOFF**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **ROAL** and **ROLOFF** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 9, 2012

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge